ALBERT RUTLEDGE et al., appellees, v. DES MOINES FLYING SERVICE, INC., appellant.

No. 50823.

(Reported in 119 N.W.2d 262)

January 15, 1963.

John Paul Jones and W. C. Hoffmann, both of Des Moines, for appellant.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellees.

STUART, J.—This is an action for damages to plaintiffs' airplane sustained when it overturned in a thunderstorm while parked in defendant's tie-down area. The petition was in two divisions. The first alleged a bailment and bailee's negligence.

The second alleged specific acts of negligence while the aircraft was in the custody of defendant. The court submitted both divisions to the jury which returned a verdict for plaintiffs. Defendant appeals from the judgment on the verdict and makes the following assignment of errors.

1. The court erred in instructing that the relationship between plaintiffs and defendant was a bailment as a matter of law.

2. The court erred (a) in failing to strike division one (b) in failing to strike each specification of negligence in division two.

3. The court erred in refusing to give defendant's requested instruction requiring the jury to decide the question of bailment as a matter of fact.

4. The court erred in refusing to allow defendant to amend answer after trial commenced to allege "Act of God".

5. The court erred in overruling motion for new trial.

The material facts are not in dispute. Plaintiffs are the owners of an airplane based at the Des Moines Municipal Airport. On July 23, 1960, it was delivered to the defendant for radio repairs. The defendant has hangar, repair, refueling and parking facilities at the airport. It had keys to the plane and picked it up from plaintiffs' tie-down area. Defendant had on previous occasions serviced and repaired this plane and had normally returned it to the plaintiffs' area when finished.

The radio was removed by defendant's employees but the airplane remained in defendant's area. Between July 23, 1960, and August 15, 1960, the airplane was flown without a radio several times by plaintiffs. Each time it was returned to defendant's area and left there. On August 15 plaintiffs were informed that the radio was repaired. It was taken on a three-day trip during which the radio did not function properly. On return it was again left with defendant. On August 19 the radio was inspected by defendant after further repairs and functioned satisfactorily. Plaintiffs were not informed and did not know repairs had been completed.

On August 20 the plane was flown by an employee of de-

fendant with plaintiffs' consent for the purpose of demonstration and remained at defendant's tie-down area. On August 21 Mr. Orion Atcheson, a fully authorized pilot, flew the airplane with plaintiffs' permission. He returned it to defendant's tie-down area, parked it and fastened a chain to each wing. There was no tie-down available for the tail at this parking place, so the tail was not tied down, although this is the approved method of securing a plane of this type.

The plane remained in this area until the evening of August 24, 1960. At this time an employee of defendant named Leland Bos saw a storm approaching. He made a visual check of all the planes by running in front of them, glancing at the tie-downs to make sure they were in place. This was part of his job. When there is danger of a high wind he ties the tail down as well as the two wings. He does not remember if he threw the seat belt around the controls of plaintiffs' airplane. Mr. Atcheson testified he was told they tried to get all the planes tied down before the storm and they had missed this one. The storm seemed to go around and there were no planes damaged when Bos left about 6 p.m.

A heavy thunderstorm occurred about 7 p.m. and at 7:03 winds out of the south-southeast at 28 knots with gusts to 60 miles per hour were recorded. Plaintiffs' airplane was overturned and damaged in the amount of $3255.20. Loss of use was claimed for two months at $350 per month.

I. In Error No. 1 defendant complains of the trial court instructing there was a bailment as a matter of law. In Error No. 2(a) defendant claims plaintiffs failed to prove a bailment existed. In Error No. 3 defendant complains of trial court's refusal to give a requested instruction making bailment a fact question to be determined by the jury. The assigned errors involve the same principles of law and facts and will be considered together.

The difficulty is neither with the law nor the facts, but with the application of the recognized law to these particular facts. The law is "* * * that there must be such a full transfer, either actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and

give to the bailee, for the time being, the sole custody and control thereof. [Citation] And there must be a lawful severance of possession and ownership to constitute a bailment. [Citations]" Reimers v. Petersen, 237 Iowa 550, 554, 22 N.W.2d 817, 820.

Defendant contends the facts do not show it had such exclusive control of the property, saying:

"The record reveals that not only did the fully authorized agent of the plaintiffs claim full possession and control of the allegedly bailed airplane prior to its loss but that full control of the allegedly bailed property was never assumed by the defendant as demonstrated by the many flights made by plaintiffs and plaintiffs' agents but also request to exercise control for a specific purpose to wit: demonstration of the airplane by the defendant."

Defendant's position seems to be that the period between July 23 and August 24 must be viewed as one transaction and as plaintiffs exercised control during this period by using the plane or authorizing its use, a bailment could not exist. We do not agree with this position.

The aircraft was delivered to defendant for repairs. The transaction would not be completed until the radio was fixed, reinstalled and possession of the aircraft redelivered to plaintiffs. There were occasions during this transaction in which defendant had no need for the aircraft. There is no reason why plaintiffs could not resume possession and control for the purpose of flight at such times. Certainly defendant would not have been liable for any damage occurring while plaintiffs were operating the aircraft. On each occasion the plane was returned to defendant's area and possession was accepted by defendant's employees. The plane again became the responsibility of defendant and a bailment was reestablished. Plaintiffs did not know when the plane might be needed by defendant to complete the repair work. It was left in defendant's area for its convenience.

Although the radio was repaired when Mr. Atcheson flew the plane on August 21 with plaintiffs' consent, they had not been notified and did not know it was ready. Defendant did not redeliver the plane to the place from which it was taken.

The presumption is that a bailment is not terminated until the property is returned to the bailor at the place received. It may, however, be terminated by bailor taking possession. Winchester v. Sipp, 252 Iowa 156, 106 N.W.2d 55.

Defendant argues the bailment, if any, was so terminated when Mr. Atcheson flew the plane on the 21st of August and returned it to the defendant's area, parked it and tied it down himself. Defendant claims this was not a delivery and was no more than an abandonment of the aircraft in the vicinity of defendant's premises. This conclusion is not justified by the record. The plane had been taken and returned many times while the radio was being repaired. The record is silent on any difference in the procedure this time from prior occasions. Mr. Atcheson says he parked and tied the plane down himself. Mr. Bos, defendant's employee, testified he directed the plane to the area. In any event defendant's employees knew it was there and accepted possession as they had done in the past and assumed supervision over it as the storm approached. The plane was properly returned to this area until it had been reported repaired and redelivered to plaintiffs.

Defendant raises the question of control because defendant's employee called for permission to fly the plane while it was in defendant's area. The purpose of the bailment was for repairs. If defendant wanted to use the plane for any other purpose, it was obligated to obtain permission. This does not alter its control for the purpose of the bailment.

The Des Moines Flying Service had exclusive control at the time of the damage. This is undisputed. From August 21 to August 24 no one flew the airplane. It remained in defendant's tie-down area. Plaintiffs were not notified it was ready for them. From Mr. Bos' testimony it is clear defendant accepted control and responsibility for the plane. He checked it when he saw a storm coming. On cross-examination he said:

"Q. Whenever you see it coming or get word from the airport that a storm is coming, it is your practice and the practice of the other linemen to check the fastenings and the tie-downs on these planes? A. That's right.

"Q. This is part of your job? A. Yes.

"Q. And it is customary to tie these high-winged planes down in three places with three tie-downs, one at the tail? A. In the event of a wind, we normally do, yes.

"Q. If you think there is a wind coming or any danger of a wind, do you tie the tail as well as the two wings, all three places? A. That's right."

The court instructed the jury: "* * * a bailment existed during the period the airplane was on the ground and the defendant had the control thereof, and under these circumstances the plaintiffs became the bailor and the defendant the bailee." Under this record such instruction is proper.

II. Defendant in assigned Error No. 2b complains of the court's failure to strike each specific ground of negligence alleged in Division II as urged in defendant's motion at the close of plaintiffs' evidence.

The specific acts of negligence alleged were:

"a. In failing to tie down securely said airplane.

"b. In tying down said airplane at only two points, when the type of airplane and the circumstances required it to be tied down at three points.

"c. In failing to properly protect said airplane from wind and the weather.

"d. In failing to furnish and use proper tie-down facilities.

"e. In failing to tie down said airplane in a proper manner.

"f. In failing to use a tail tie-down on said plane.

"g. In failing to protect said plane and tie the same down in a workmanlike manner."

In support of its position defendant quotes extensively from the testimony of Mr. Atcheson as to his procedure when he returned the plane three days before the storm; suggesting defendant had no duty toward this plane after it was placed in its area. This is not supported by the evidence of its employee, Bos, set out above. From the evidence the jury could find that the defendant's employees did not properly perform their duties of checking and securing planes in its area when a storm was approaching. All seven specifications of negligence are based upon these duties and were properly submitted to the jury in the statement of issues. However, because of their similarity, the

trial court might well have combined several specifications. Clarke v. Hubbell, 249 Iowa 306, 313, 86 N.W.2d 905; Smith v. Pine, 234 Iowa 256, 263, 12 N.W.2d 236; Bonnett v. Oertwig, 234 Iowa 864, 865, 14 N.W.2d 739.

III. The petition in this action was filed February 14, 1961. On March 23, 1961, defendant filed its answer which was a general denial. On May 11 plaintiff amended petition itemizing damages. On May 12, 1961, defendant answered the amendment by repeating its denial. Certificate of Readiness was filed December 19, 1961. Trial commenced January 18, 1962, and a jury was sworn. On January 19, 1962, defendant filed an amended answer alleging "Act of God" as a defense. On plaintiffs' motion, the court struck the answer as untimely. No explanation was given for the belated filing of the amendment.

In assigned Error No. 4 the defendant contends the court erred in striking the answer and that such amendments are a matter of right under the first sentence of I. R. C. P. 88. Defendant refers to comments by Cook on page 551 of Volume 1 of Iowa Rules of Civil Procedure in which he states: "The first sentence of this Rule, as to amending a pleading before it is responded to, restates the prior statute. Such amendments are matters of right * * *."

The cases cited by defendant do not support this position. In the case of Dougherty v. McFee, 221 Iowa 391, 265 N.W. 176, the trial court permitted an amendment during trial and we held it was not an abuse of discretion to do so. Cases appearing in the annotations to rule 88 without exception hold the allowance of amendment is largely within the discretion of the trial court. After trial has commenced only such amendments to pleading may be filed as the trial court in its sound discretion permits.

■ Amendment as a matter of right is limited to those pleadings requiring a response which response has not been filed. An answer which contains new matter and thus requires a reply under rule 73 of the Iowa Rules of Civil Procedure can be amended until such reply is filed or trial is commenced without such reply having been filed. If we followed the defendant's theory and held the trial court could not exercise its discretion

after trial commenced, the defendant could amend as a matter of right even after judgment.

The trial court was within its discretion in refusing to allow the amendment. As the evidence in support of the defense of "Act of God" was admitted by the trial court and was before the jury on the question of proximate cause, the denial of the amendment could not have seriously prejudiced the defendant.

IV. In assigned Error No. 5 defendant claims the trial court erred in overruling its Motion for New Trial. The motion was based upon the first four assigned errors which have already been discussed. The court did not err in overruling defendant's Motion for New Trial.—Affirmed.

All JUSTICES concur.